case number 15-3263 USA v. Ryan Collins and case number 15-3309 USA v. Ryan Collins or argument not to exceed 15 minutes per side Michael Sullivan for the appellant cross appellee Good morning. May it please the court. My name is Michael A. Sullivan. I represent the United States of America, the appellant and the cross appellee in this case. If I'd like to reserve please three minutes for rebuttal. Thank you. In United States v. Martin, the district judge considered historical surveys of jurors he had conducted in previous child pornography trials to opine as to the adequacy of the child pornography guidelines. A panel of this court criticized the surveys observing that, and I quote, a jury asked to select a sentence without receiving any more information than it had to determine guilt is acting without the tools necessary for the sentencing decision, end quote. Well the jury didn't select the sentence did they? They, well they each selected, each juror was asked what sentence they would select and then the judge admittedly used that as a factor in determining. Well I know that but when you quote from some case about a jury selecting a sentence that's an entirely different ballgame. Well frankly the, it's the same district judge and the district judge's conduct in the Martin case was actually frankly less egregious than in this case. In Martin he was considering historical surveys and he was just using that as, as he termed an academic exercise talking about the sentencing guidelines. Here he actually surveyed the jury that determined the guilt of Mr. Collins and admittedly used their responses to inform his decision as to sentencing. So he actually not only... He didn't say to them you're in charge of sentencing here and he didn't use what they gave him, how they considered it as a factor. His, his view on these sentences is certainly well known but it's, it's not as if he surveyed the jury and then said okay well that's what the jury thinks and that's how I'm going to sentence. He didn't do that. No he, but he did admittedly, it was a factor he considered. He indicated he considered it as a factor. What's your best source, what's your best case for saying that he can't consider that as a factor? Well I referenced the Malone case talking about considering state sentences and that the state sentences are an impermissible factor in determining a sentence and frankly while it's clearly an impermissible factor, state sentences are at least based on the informed decision of a state judge and the legislation that, that supports the state sentences. Here this is a jury survey. Judge Gibbons during the Martin Oral Argument referred to the surveys as a man-on-the-street survey. This is nothing but just an opinion of the jury when they have absolutely nothing to base the opinion on. They're, they're so devoid of the factors necessary to, to inform a... That'd be your, I'm, I'm sensing now you're saying the impermissibility, the impermissible feature of this, using this factor is that it shouldn't have been used at all because they were so ill-informed. Yes. That's, that's, so the government's position is that the sentence is substantially unreasonable because it was an impermissible factor. Additionally we also indicate that the court gave very little credence to the deterrence factor and in addition just the size of the variance in, as well leads to the Well, I think it would still be an impermissible factor. Frankly, whether or not the Department of Justice will authorize an appeal on a sentence like that, I, I, I can't answer that, but I believe it's an imperm... And frankly, as even the court observed in Malone, I, I believe it was Judge Keithless, no, McKee, observed in Malone, considering impermissible factors also could lead to upward variances. Right, so it's not only that it would lead, in his case it led to what the government contends is a drastic and the ultimate variance down to the mandatory minimum, but permitting such a procedure could lead to upward variances as well. Judge Squinn's own law review article says that in the white-collar cases the jurors often recommend sentences higher than the guidelines. Well, but I guess my thought is this, that it seems to me the, the nub is that five years was an unreasonably, an unreasonable sentence and it really doesn't matter how he got there. Supposing he hadn't consulted the jury and given this man five years, would you be here? I would, would still be, whether I'd be here, I can't answer. I still think it would be an, it would, it would have been an unreasonable sentence. It would have been an abuse of discretion to vary so dramatically. But isn't that your burden? Regardless of how he got there, isn't it your burden to show that the sentence ultimately imposed was unreasonable? Absolutely, and in this case, while I agree that the drastic variance is a huge part of that, I believe the impermissible use of the juror survey is also part of it. I think there are really three distinct factors of this sentence that make it an abuse of discretion in an unreasonable sentence, and one of them is the drastic variance. I mean, he went from 262 months at the bottom of the guideline level to the mandatory minimum of 60 months. The mandatory minimum should be reserved for the least culpable offender committing the least serious form of the offense. Here we had neither. We had, you know, a mandatory minimum on a receipt of child pornography would be five years. Here it's receipt and distribution. It involves images involving children as young as infants being subjected to sadistic conduct. But it appears that Judge Gwynne measured that against the features that argued for leniency, and that is that this gentleman, no prior offenses, you know, I don't need to tick them off, but you know exactly what I'm talking about. There was a balancing that went on. Well, but frankly, if there is a balancing, doesn't that, in as much as we can see from Judge Gwynne's, the reasoning that he offered on the record, we can see that he balanced many factors, and right there, isn't that very difficult for this court to say, in that it's, that this impermissible factor weighed so heavily, let's say it's impermissible, call it that for purposes here, that it weighed so heavily that the sentence becomes unreasonable? I think not, Judge. I think first, I think the impermissible factor, in and of itself, makes the sentence unreasonable, regardless of the ultimate sentence, that the use of it makes it. Do you have a case that says that? Any case? Well, again, I would. It's not the ones you've told us about. It's not Martin. Not Martin, well no, Martin didn't, it wasn't exactly on point, but I think Malone, using the state sentences, it was not necessarily, it was just the fact of the use of the state sentence, that the court in that case said that was an impermissible factor. They didn't, I don't believe they reversed it specifically on the ultimate number that was given, but on the use of the state sentence as a comparative sentence, but... I'm struggling with whether it makes any difference in your analysis that the court, the Supreme Court has said, and you know, sentencing judges, if they just have a policy disagreement with the guidelines, they can factor that in. They can sentence in a way that reflects their policy disagreement, and Judge Gwinn pretty clearly has one of those, and it sort of looks from this record that all that the jury questioning did was to sort of show that they were in line with his policy views. He certainly, certainly the Supreme Court authority to have a policy disagreement, absolutely, but that's not just what happened. I mean, in the Bisline case, this court reversed it because the court said because Congress, you know, because the Sentencing Commission wasn't involved in all the guidelines, I disagree with the guidelines and give a little sentence, and this court said that's not permissible, that was not okay. You can have a policy disagreement, but you can't say just because you didn't like the way that the guidelines were formulated in that case. So I think that certainly the jury's survey reinforced Judge Gwinn's opinion regarding the guidelines, may have reinforced his opinion, his policy disagreement with the guidelines, but that's not just what he said. He said he relied on the jury's survey. He said that was a factor, and that's an impermissible factor and should warrant a remand of the sentencing, but in addition, even if there's a policy disagreement, I don't think it's unfettered discretion to give any sentence he wants. It's still a major variance, still has to be supported by a significant justification, and in response to Judge Cook's comments, while he may have balanced Mr. Collins' background, there was nothing really particularly unusual of Mr. Collins' background. He was really rather a pedestrian offender. He was someone, he had no priors, as most child pornography offenders don't. He had a family, he had a job. There was really nothing that was so extraordinary about him that it would take him from 262 months down to 60 months without something else, and it's the government's position that, in this case, that something else was the impermissible juror's survey. That was what tipped the scales here and caused such a drastic variance to the I'm sorry, I should address the deterrence issue as well. As this court had indicated in Comisión, deterrence is a significant factor in child pornography cases, and here Judge Quinn specifically said he didn't find deterrence to be, he almost just disregarded it, just as an offhand comment, said I don't find it to be a major factor, and gave very little credence to the deterrence issue. So we believe that also factored into the substantive unreasonableness of the sentence. And again, I mean ultimately, aside from the egregious nature of Mr. Collins' conduct, it was exacerbated here when he, even according to Judge Quinn's own findings, purged himself during trial, and the evidence showed that he not only was getting sexual gratification from the observing children in public, clearly this offender was more than the least serious offender. Clearly his conduct was more serious than the base offense level of the receipt he received and distributed, and his conduct and his background warranted a more significant sentence than the mandatory minimum. And just lastly, I know there was a cross appeal filed in this case, but there was never a brief that raised any issues regarding the trialist matter, so I have nothing to respond to as far as the cross appeal, and it would be the government's position that the cross appeal has been abandoned. And so for the reasons as set forth, we would ask that this court remand the case, find the case for resentencing, and thank you. Thank you. Good morning, your honors, and may it please the court. I'm Robert I'm appointed to represent Mr. Collins in this case. Mr. Collins committed a serious offense, and he received a significant sentence that the trial judge found was sufficient to carry out the purposes of criminal punishment after the trial judge accurately calculated and fully considered the advisory guidelines sentencing range. The guidelines in this case were the that everything in the record indicated one thing. The guidelines were off the mark. That began with the pre-sentence report recommendation, with the sentencing memorandum by Mr. Collins' counsel below, with the report of the commission in 2012 on these guidelines, and opinions by members of this court in the Walters case. At the sentencing hearing to this already considerable record, the trial judge added his own experience and the results of a post-trial questionnaire of the former jurors. The trial judge at the sentencing hearing then put the core question in this case directly to the government and asked how the guidelines would reflect just punishment for Mr. Collins. To that question, the government had no answer other than to object to one piece of information in the record, the results of the questionnaires. That, of course, was only one of many indications that the guidelines were off the mark. Tell us about that question to the government again. Is Judge Gwynne sort of teeing it up for his issue about these guidelines? What did he ask the government? He asked the government how the guidelines recommendation would reflect just punishment for Mr. Collins. And instead of answering that question, which was obviously fundamental in the core question in the sentencing hearing below, it was challenging the government to support the guidelines, I gather. That's the only way I read that. Yes, Your Honor. It was. Okay, well the government didn't establish the guidelines, right? I don't know. It seems rhetorical to me. It seems rhetorical. Well, yes, Your Honor, but it's significant given that the only efforts by the government... I mean, should we take anything that the government didn't come up with something in response to that? Yes, Your Honor. You're asking us to do that. What is it? There's no argument that this sentence is not sufficient to meet the purposes of 3553A. Oh, the sentence imposed? The sentence imposed. I see, okay. If there's... Yes, Your Honor. All right. I understand. I misunderstood. Sorry. And to be clear, the government, its only recommendation of a 60-months to the question, are you asking for 20 years? And it's the answer, yeah. So the point is you have Mr. Collins' counsel requesting 60 months, supporting that request with the sentencing memorandum, the pre-sentence report recommending a variance given the obvious disparity in the sentence, and everything else in the record supporting the 60 months. The only thing going the other way is the guidelines appear to come to a different result. And so the receive. And the key to why the guidelines are off the mark, it's not that Mr. Collins has something in his background. It's about his conduct and his culpability. And this is an easy case to understand where we need to differentiate amongst offenders. Because Mr. Collins did not purchase child pornography. He did not trade child pornography. And the difference between trade and distribute is what? He did not offer child pornography in exchange for child pornography with others. He did not encourage the abuse of children, which is what that conduct does. There is significant evidence behind the guidelines that says that when you turn child pornography into a currency, you encourage the abuse of children. And that is the offense that the guidelines are And understand that when the guidelines were first put together and adjusted by Congress, the reasonable assumption if a person has child pornography is they got it one of three ways. They produced it, they purchased it, or they traded for it. We now have a category of offenders who got it another way and did so without encouraging the abuse of children by turning it into currency and doing anything that would incentivize someone to abuse children. That's the conduct that merits these guidelines sentences. The conduct of Mr. Collins was wholly apart from that. Qualitatively different. In the Robinson case, in Robinson 1 and Footnote 2, file sharing is qualitatively different than purchasing materials. And reviewing this court's review of sentences, such as in Fink and Borho, both of those individuals engaged in trading. And even more dangerous conduct, including Fink had abused his own daughter. The file sharing only defendants are qualitatively different. And the guidelines are simply not aimed at them. And that is what everything in this record indicated, that it made no sense for this type of offender, that you can draw no link between him and encouragement of the abuse of children, that this five year sentence was reasonable. So the only thing the government objects to is this juror questionnaire. And your make clear that the real question here is how was it used? And what was it? It was, it was not a poll of the jury. The jurors were no longer serving. And how was it used? It was used, the record shows, to assess the guidelines, to confirm what everything else indicated that they were off the mark. It was superfluous. He says he relied on it. But it was truly superfluous given that this was such a one-sided record indicating that the guidelines were off the mark. So, this, the government is saying, well, whether or not this sentence is reasonable or an abuse of discretion, the sentence should be reversed simply because of the reliance on the juror questionnaires if this court were to find that judges shouldn't use questionnaires. And that calls into question the court's impermissible factor review cases. And Mr. Collins would submit that it's time to examine those precedents in light of Gall, Kimbrough, and Spears, and in light of the traditional rule of wide open sentencing, 3661, and the broad sentencing purposes to at least define, if not abandon, the idea that a single impertinent statement in a sentencing record would merit reversal and resentencing. And the court has directed that the sentence be reviewed, that the variance be reviewed. The Supreme Court in Gall did not, in outlining the standard of review, identify anything about impermissible factors. Notably, the court did refer to clearly erroneous facts, so it wasn't that they weren't listing the basis for a reversal. And I think the two Funk opinions, unfortunately both of which were vacated, actually reveal this dichotomy because in the first Funk opinion there is a finding of an impermissible factor. Then that is vacated in light of Gall for reconsideration. And in the opinion reconsidering it, it says the impermissible factor holding, it doesn't use that term, but it refers to the two holdings reversed by Gall. So arguably impermissible factor review, at least in the way that the government would have it be used as a basis for reversing the entire sentence, does not survive the court's cases. And in its brief, the government says, well, 3661 doesn't apply. But there's a finding on the record that the relevance of the juror questionnaires is that the jurors were familiar with this conduct. They were certainly as familiar with this conduct as the other individuals who've been permitted to contribute to sentencing hearings, such as a mother-in-law of an offender, or a sister-in-law of an offender, or the mother of a victim, that this was information about the conduct and it reflected how serious the offense was. And in this case, the jurors not only had been at the trial, but Mr. Collins testified about his conduct. So they were well aware of his conduct, and this was, again, just one piece of information in the record that all went one way. And while this might be somewhat novel, I think it's wholly similar to other beneficial practices that have come along that even preceded the commission. I would note that my confirmation hearing, Judge Guy, is that the Eastern District of Michigan used to have sentencing councils, where judges would get together and discuss the appropriate sentences in order to try to achieve greater uniformity and less disparity in sentences. It's also similar to the probation officer, who, again, in this case said that a variance is likely an order. It's the same thing. It's someone looking at the conduct and giving an opinion. In finding that this is an abuse of discretion, a strict reading of 3661 would say that no limitation can be placed on the use of this information concerning the conduct. And importantly, this trial judge used this information because he thinks deeply about sentencing. And he believes that this is centrally relevant information in order to assess the seriousness of the offense. Now, he did not replace himself with a jury. He did not delegate his sentencing function to them. He used it as additional information. Now, the government relies on the Martin case, and I think the Martin case goes the other way. In Martin, you had an extraordinary claim that said the judge should have varied further because of the juror questionnaires from other cases that weren't even about the direct conduct at issue. One would have thought that that would have been cast aside summarily as not a proper basis for an objection under an abuse of discretion standard. Instead, the court, in an unpublished opinion, went to great lengths to explain why the judge's decision couldn't be second guessed by those two juror surveys from prior cases. So that suggests that the juror's, former juror's assessment of the conduct was so important that you needed to point out that they didn't have the pre-sentence report. And again, this isn't giving them the sentencing function. It's using it not even to impose the sentence, but to assess the validity of the guidelines as applied to the conduct and culpability of this particular offender. As to consideration of deterrence, plain error applies. And other than pointing to page ID 756 and observing that the key word there is extremely long sentences, as in longer than five years of incarceration, that the judge adequately considered deterrence. He was merely commenting that longer than five years he didn't think would pose additional deterrence. This is not a non-custodial sentence. Finally, Your Honors, I think disparity is crucial in this case. I don't see how this sentence could be held to be unreasonable given Grossman. You had a sentence for 66 months for an offender who engaged in trading. He had thousands of images. He enticed children online. He was a member of an online group of offenders. And this court affirmed his 66-month sentence. So Mr. Collins is clearly less culpable than Mr. Grossman. And I would reiterate here, this is 93 images and 19 videos obtained through file sharing. There's no trading. There's no indication of dangerousness. The government is not arguing that Mr. Collins is dangerous. They're not arguing that he encouraged the abuse of children. And that indicates that the guidelines are off the mark. And there is no basis to second-guess the trial judges. Reason, decision that this sentence carries out the purposes of criminal punishment and it was not an abuse of discretion. Accordingly, Mr. Collins would ask this court to affirm the decision of the trial judge in this case. Thank you. Thank you, counsel. Thank you. I'll be brief. I just want to address a couple of points made by counsel. One of all is minimization of the use of peer-to-peer software and indicating that somehow that's really not as serious an offense. Frankly, peer-to-peer software is every bit part of the industry of the trading of child pornography as purchasing child pornography or anything else. It's peer-to-peer and Mr. Collins was in a unique particular situation to understand it. He was a computer IT guy. He knew exactly how it worked. And how it works is that the child is made available to others, available to download in your shared folder. So peer-to-peer software is the way that offenders now trade child pornography. They make them available to others to download and they download them from others. So it's every bit part of the industry of exploiting children as any other form of getting child pornography. He also makes comments that somehow a juror would be, a comment of a juror regarding sentencing is just as important as the comment of a victim representative speaking in sentencing. He said the jurors don't know any more about the, know just as much about the crime as the victim. Nothing could be further from the truth. The victim is there, first of all, statutorily authorized to make a statement at sentencing. And secondly, the victim is giving the perspective on the seriousness of the offense because the victim is telling the court how this crime affected the victim. The jurors don't have that perspective. And in fact, asking the jurors their opinion about this crime specifically discards the importance of a victim's statement because the jurors in this case had no ability to read the victim impact statements. Were there victim statements here? They're part of the PSR. They were part of the PSR in this case. I think they were in appendix to the PSR. And they give the court an idea of the horrendous nature of this crime. The jurors didn't have that. They didn't have that before them. I was asking whether they testified live. Oh, I'm sorry. No, they didn't. There were statements that were submitted to the court that the court had the opportunity to review. They did not testify live. I'm sorry, Judge. I misunderstood. And additionally, the jury doesn't have really all the facts. The jury only has the facts sufficient to support a finding of guilt. Frankly, all the evidence that's regularly excluded pursuant to federal rules, Evidence 403, is very relevant for sentencing, but it's not admissible at trial. So when you ask a juror who gets a proved guilt, to ask them to opine as to sentencing, they're not in a position to do such. And in this case, again, in a child pornography case, only small portions of the videos or images are displayed to the jury. They don't get the true flavor of the depth and depravity of the defendant's collection. Because if the government were to show everything, then there'd be an argument that it was unduly prejudicial. We show enough to establish the crime, but we're not there to show enough to really establish the true depravity of the defendant. So they don't have all the facts. And lastly, to point to one case to say, well, the Grossman case, you know, I compare it to that. First of all, Grossman pled guilty to possession, not to receipt and distribution. And secondly, I mean, I could just point to cases I've prosecuted that this court has affirmed. I mean, Joseph Peroska received 240 months receipt and distribution, peer-to-peer case, was affirmed by this court. Robert Ruth received 360 months receipt and distribution. You can look at, you know, you can always point to certain cases to prove your point. But the fact is, this case, this sentence, was substantially unreasonable because of the three factors that's stated by the government. Mr. Batchelder, may I ask one more question? Sure, Mayor. It seems to me, and if you have a different view, tell me, but the only way that we could address the jury issue in the manner that you suggest, really, is for us to say, in this case, that in the Sixth Circuit, district judges simply can't consider jury's opinion as a factor in sentencing. I think that's the fact. But we'd have to make an across-the-board rule. For that issue, I think you could still reverse and remand the sentencing here is unreasonable. Well, I'm just, I'm dividing this on the thing. So, if we don't feel that that's appropriate, then we simply have to consider the unreasonableness of the five-year sentence, regardless of how we reached it. Right, and in addition to the issue regarding the deterrence. But yes, I do, as to the issue of the jury surveys, I believe that this court should hold that it is an impermissible factor and a district court cannot survey a jury to ask their opinion as to the sentencing. Okay, thank you. Thank you, counsel. The case will be submitted. Clerk may call the next case.